STATE v. CORLEY.

1. CHALLENGE BY THE STATE.—A peremptory challenge of a juror by the State may be interposed at any time after the juror is called, and before the prisoner has spoken.

2. EVIDENCE—OPINION—HARMLESS ERROR.—If it be error to permit the State's witness, after testifying to defendant's admission of the homicide, and that witness had denied knowledge after such admission, to state that he had so denied because defendant had requested him to do so, and because, possibly, he feared for his safety if he divulged what had been admitted, it is harmless error where the defendant afterwards testified to such admission, and to his request that it be not repeated.

3. HOMICIDE—SELF-DEFENCE—RETREATING.—Where the defendant, standing on the top of one of the sides of a cut, shot and killed the deceased as he was driving in a buggy in this cut, the trial judge did not err in refusing to charge that if the meeting was not premeditated, and the deceased was armed and made violent threats against defendant, that defendant was not bound to run away, but might stand his ground and protect himself; nor in charging that he was bound not to take the life of the deceased, if he could, by retreating, have avoided such necessity.

Before NORTON, J., Aiken, April, 1894.

Indictment against Jesse Corley for the murder of his brother, Henry Corley.

*Messrs. Henderson Bros.*, for appellant.

*Mr. Bellinger*, solicitor, and *Mr. O. C. Jordan*, contra.

February 18, 1895.  The opinion of the court was delivered by

MR. JUSTICE POPE.  The defendant came on to be tried before his honor, Judge Norton, and a jury, at the April Term, 1894, of the Court of General Sessions for Aiken County, in this State, for the crime of murder.  The verdict was guilty, with recommendation to the mercy of the court.  Thereafter judgment was duly entered.  He now appeals to this court on four grounds, which will be considered in their order.

1st.  "That his honor erred, it is submitted, in permitting the State's objection to the juryman, W. H. Baker, after he had been examined on his *voir dire*, and presented to the prisoner for acceptance or rejection, and in ruling that it is law that the State can exercise its right of peremptory challenge at any time, whereas it is submitted that it is the practice and the law that the State must exercise its right of peremptory challenge before the juryman is presented to the prisoner."  The "Case" discloses that before the prisoner signified by his answer either an acceptance or rejection of the juror, the solicitor objected to such juror.  The practice and the law governing this particular question was fully considered by this court in the case of *State* v. *Haines*, 36 S. C., 509, and it was there decided: "In the practice as it obtains at the bar in

this State, the State's attorney is allowed time to speak until the prisoner has spoken." Thus it is manifest that the first ground of appeal herein is untenable.

2. "That his honor erred, it is submitted, in permitting the witness, Morgan Holly, a witness produced on the part of the State, after testifying what the prisoner told him concerning the homicide, to state that he did not state that conversation with the defendant to others, and further permitting him to give his reasons why he did not state said conversations to others; in that, it is submitted, that it was illegal to permit said witness to give his reasons which controlled him, as the same amounted to an opinion on the conduct of the prisoner, and had a tendency to mislead the jury." The "Case" discloses that the witness, John Morgan Holly, was informed by the prisoner, a short time after he had fired the fatal shot, of what he had done, but at the same time had requested the witness not to divulge what he had told him; that the witness, in the same evening, in the presence of the defendant, deliberately denied the truth, when questioned as to who had been shot, by stating that he did not know, and, in addition, he preserved this dreadful secret for some time thereafter; also, the "Case" discloses that when the defendant was placed upon the stand as a witness, he admitted firing upon his brother, and that he, on the same evening, disclosed to the witness, Morgan Holly, all he had done in the matter of the shooting, and virtually admitted that he had requested such witness to keep his secret. Under these circumstances, we cannot see what possible effect injurious to the prisoner could result from Morgan Holly testifying that the reason he did not tell the truth at first was that the defendant had requested him not to do so—when the defendant admitted he had made such request. But defendant's counsel very ingeniously suggests that when the witness Holly suggests that he might also have been influenced by some doubt as to his own safety, if he did not tell what defendant told him as a secret, such conduct of the prisoner put him in fear, and such an opinion might mislead the jury. As to this suggestion, we can see no reason why the witness should not be allowed to explain his conduct (see

9—43

*State* v. *Pulley*, 63 N. C., 8); and, in this instance, if it was error in the Circuit Judge to admit the testimony, it was harmless error.    This exception must be overruled.

We will next consider the third and fourth exceptions together, as they treat of the fourth request to charge submitted by the defendant.   3.  "That his honor erred, it is submitted, in refusing to charge the defendant's fourth request to charge, which was as follows: 'That if the jury believe from the evidence that the meeting of the deceased and the defendant was not premeditated by the defendant, but an unexpected meeting, and they further believe the deceased was armed, and made violent threats towards the defendant known to him, then the jury is charged that the defendant was not bound to retreat and run away, but had the right to stand his ground and protect himself,' in that it is submitted that the said request to charge is a correct proposition of law."   4. "That it is submitted his honor erred in remarking to the jury concerning the aforesaid request to charge as follows: 'I charge you that if he had any other probable means of escape than that of taking the life of his brother, he was bound to adopt that means.   The law does not permit of the taking of human life except from necessity, and it does require the retreating of a man under all circumstances before the taking the life of an assailant, unless he be in his own house, and unless by retreating he has no probable means of escape,' whereas it is submitted that such is not the law."

The right of self-defence is founded in nature, and in applying the principle of law to ascertain, in cases of homicide, whether such defence may be successfully invoked, the nicest care must be taken.   On the one hand, it will not do to relax these rules, lest society be placed at the mercy of the violent and bloody-minded.   Then, on the other hand, too harsh requirements must not be laid down, lest this defence shall be practically denied the citizen.   We have read the charge of the presiding judge, and candor compels us to say that he has fairly, clearly, and faithfully expounded the law on this subject.   The defendant had the right to have the Circuit Judge pass upon the proposition of law he submitted to him in this fourth re-

quest to charge.   The Circuit Judge has responded directly, saying he could not charge the request, in the form propounded, as sound law, and he pointed out what in his judgment was needed to make it good law.   Let us, then, consider this grave .matter; we say grave matter, because it is the last chance for a new trial left to the defendant, as disclosed by the "Case."

It appears that Henry Corley and Jesse Corley were brothers. They owned farms near each other.   Their lives were not clean. On at least three occasions they had serious difficulties, the one with the other.   Twice Henry cut with a knife and shot with a pistol his brother Jesse.   The cause of the deadly feud between them is involved in some doubt.   A suggestion of a deadly insult and injury done to the honor of Henry by his brother Jesse was made at the trial.   Nothing short of this could account for the dreadful conduct of Henry to Jesse.   This would seem to explain the seeming want of spirit in Jesse, for "conscience makes cowards of us all."   There can be no doubt but that both Henry and Jesse had each uttered dreadful threats towards each other, and that each had notice of the threats of the other. On Saturday, the 16th day of September, 1893, Henry Corley and a Mr. Weathersbee, in the morning, went to the city of Augusta, Georgia, and after spending the day in that city, returned late in the afternoon in the direction of their homes in Aiken County, and when about 1½ miles from Augusta, Jesse Corley fired upon them from a bank about twelve or fourteen feet higher than the roadway, mortally wounding Henry Corley and wounding Mr. Weathersbee, while the two were quietly riding together in the latter's buggy.   Just here the State and the defendant separate.   The State contends that Jesse Corley waylaid his brother, and fired from behind a screen made of bushes, thus taking his life.   In other words, that he cowardly assassinated his brother.   The defendant contends that unexpectedly he met his brother, and when he saw his brother Henry reach down for what he supposed was a pistol, remembering his dreadful threats and former violence, he fired upon him, and took his life in self-defence.   There was no denial that the gun was fired by Jesse while Henry and Mr. Weathersbee were in a deep cut. Hence the defendant's request.

An analysis of that request to charge by the defendant shows that it is wanting in the element of necessity to take life in the conduct of Jesse. Was this not fatal error? We think it was. This court, in the case of *State* v. *Trammell,* 40 S. C., 333, held: "Clearly one of the foundation rocks upon which the plea of self-defence must be bottomed is that it was necessary for the accused to take the life of his fellow-man to protect his own, or to protect him from serious bodily harm. *State* v. *Wyse,* 33 S. C., 594; *State* v. *Merriman,* 34 *Id.,* 40." Again, in the same case, it is said: "The Circuit Judge was right in stating that, under the laws of this State, if it was necessary to retreat to avoid shedding human blood, retreat should be made." Such being the case, these exceptions must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court must be affirmed, and that the cause be remanded to the Court of General Sessions for Aiken County, in order that a new day may be assigned for the execution of the sentence heretofore imposed. Let the remittitur in this case be sent down by the clerk of this court forthwith.